[relates to Docket Item 5]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GLOUCESTER COUNTY IMPROVEMENT
AUTHORITY,

                Plaintiff,

      v.

GALLENTHIN REALTY DEVELOPMENT,
INC.,

                Defendant.

HON. JEROME B. SIMANDLE

Civil Action No. 07-5328

**OPINION**

APPEARANCES:

James Michael Graziano, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033
    Attorney for Plaintiff Gloucester County Improvement
    Authority

F. Michael Daily, Jr., Esq.
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, NJ 08108
    Attorney for Defendant Gallenthin Realty Development, Inc.

**SIMANDLE**, District Judge:

# I.    INTRODUCTION

This matter is before the Court on Plaintiff's motion to remand this case back to state court.  Plaintiff Gloucester County Improvement Authority ("GCIA") brought this action in the Superior Court of New Jersey to enforce a court order it had received authorizing its agents to enter Defendant's property

pursuant to New Jersey's prospective condemnation statute. Defendant Gallenthin Realty ("Gallenthin") removed the lawsuit to this Court, asserting federal question jurisdiction, and GCIA subsequently filed the instant motion [Docket Item 5] to remand and to award GCIA costs on account of Gallenthin's improper removal. For the following reasons, the Court will remand this matter to state court and grant GCIA's motion for costs.

## II.   BACKGROUND

According to the state court complaint, pursuant to a 2005 agreement between GCIA, the New Jersey Department of Transportation, and the New Jersey Economic Development Authority, GCIA agreed to construct a bridge and roadway connecting Interstate 295 with the Paulsboro Marine Terminal. (Def.'s Notice of Removal Ex. A ¶ 4.) GCIA determined that the best location for the bridge and roadway included a portion of Defendant's property (the "Property"). (Id. at ¶ 6.) In a letter to Gallenthin dated February 3, 2006, GCIA informed Gallenthin that it sought to enter the Property pursuant to New Jersey's prospective condemnation statute, N.J.S.A. 20:3-16, "to conduct initial field investigations" specifically described in the letter. (Id. at ¶¶ 8-9.) Counsel for Defendant responded to GCIA's letter in a letter dated February 16, 2006, in which Gallenthin warned GCIA that its agents' entry onto the Property would "risk a police confrontation"; Gallenthin's letter claimed

that GCIA was not a potential condemnor and argued that the pendency of a separate lawsuit by a separate public entity, the Borough of Paulsboro, warranted its refusal to permit GCIA's agents' entry.  (Id. at ¶¶ 10-11.)  A series of letters and other communications between the parties ensued, in which, according to the state court complaint, Gallenthin first acknowledged GCIA's statutory right of access but subsequently refused to permit GCIA's agents to enter the Property.  (Id. at ¶¶ 12-20.)

On April 5, 2006, Plaintiff filed a complaint in state court in order to secure access to the Property, and in an order dated April 28, 2006, the court found that Plaintiff was entitled to such access under N.J.S.A. 20:3-16.  (Id. at ¶¶ 21-25.)  On September 20, 2007, Plaintiff once again sent Defendant a letter notifying Defendant of its intent to enter the Property on October 4, 2007, pursuant to N.J.S.A. 20:3-16 and the April 28, 2006 court order.  (Id. at ¶¶ 28-30.)  Defendant responded in a letter dated October 3, 2007, stating that the New Jersey Supreme Court's recent decision in Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344 (2007), justified its continued refusal to permit GCIA's agents to enter the Property.[1]

---

[1]  In Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, the New Jersey Supreme Court held that the Borough of Paulsboro's classification of Gallenthin's property as an area "in need of redevelopment" under N.J.S.A. 40A:12A-5(e) violated New Jersey's Constitution because "[t]he New Jersey Constitution does not permit government redevelopment of private property solely because the property is not used in an optimal manner."

(Id. at ¶¶ 31-33.)   GCIA filed this action in the Superior Court of New Jersey on October 10, 2007 seeking enforcement of the court's previous order granting it access to the Property under N.J.S.A. 20:3-16.

Defendant filed a notice of removal of the action to this Court on November 6, 2007, asserting that the Court has federal question jurisdiction over the lawsuit under 28 U.S.C. §§ 1331 and 1441(b) because "[t]he proposed bridge will necessarily cross the Mantua Creek, a federal, navigable waterway," (Def.'s Notice of Removal ¶ 8), and, under 33 C.F.R. § 115.50(b), "a bridge cannot lawfully be constructed across any navigable waterway of the United States until the location and plans have been approved by the Coast Guard."   Plaintiff subsequently moved to remand the matter back to state court [Docket Item 5].   The Court conducted a hearing on February 4, 2008 to address Plaintiff's motion, at which it heard oral argument from both parties.

## III. DISCUSSION

### A.   Motion to Remand

---

Paulsboro, 191 N.J. at 373.  The Court held that the government's redevelopment power was restricted to "blighted areas," and found that Gallenthin's property was not such an area.  Id.
    As it repeatedly and accurately emphasizes in its submissions to the Court, GCIA was not a party to the Paulsboro action, and "[n]either the GCIA's right to condemn the property, nor the GCIA's right to access, pursuant to N.J.S.A. 20:3-16[,] were at issue before the Supreme Court."  (Def.'s Notice of Removal Ex. A ¶ 34.)

The permissibility of removing state actions to federal court is governed by 28 U.S.C. § 1441, which authorizes state-court defendants to remove "[o]nly state-court actions that originally could have been filed in federal court." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).  In cases such as this one, "[w]here the parties are not diverse, removal is appropriate only if the case falls within the district court's original 'federal question' jurisdiction." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 389 (3d Cir. 2002).  Whether or not the Court has federal question jurisdiction over a matter that the defendant has removed from state court is governed by the "well-pleaded complaint rule," under which the federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." Id. (citation omitted).  The Court of Appeals has repeatedly emphasized that the party "who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists," and that "all doubts should be resolved in favor of remand." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990) (internal quotations and citations omitted).

Recognizing that there is no evident federal question on the face of GCIA's state court complaint, Gallenthin appears to make two arguments in support of its assertion of federal question jurisdiction.  First, in its notice of removal, Gallenthin

appears to argue that a question of federal law constitutes a necessary element of Plaintiff's state law claim.  Second, Gallenthin references a legion of documents appearing to consist of maps and appropriations bills, as well as the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332 et seq., and argues that these materials "so control Gallenthin's water front property, the majority of which is subject to tidal water, to such an extent that the Federal interest preempts State condemnation claims such as [that which is] asserted by the Plaintiff."  (Def.'s Opp'n Br. 17.)  Neither of these arguments is sufficient to demonstrate the existence of a federal question in GCIA's state court complaint, for reasons next discussed.

        1.   <u>Federal Law As a Necessary Element of Plaintiff's State Law Claims</u>

In its notice of removal, Defendant states that the federal question implicated by Plaintiff's state court complaint lies in the fact that "[t]he GCIA is beginning the process of siting and locating its proposed bridge, notwithstanding the fact that the United States Coast Guard is the singular authority for siting and locating bridges that cross federal, navigable waterways."  (Def.'s Notice of Removal ¶ 10.)  Defendant appears to argue that this is a sufficient basis for federal question jurisdiction because federal regulations provide that "a bridge cannot lawfully be constructed across any navigable waterway of the United States until the location and plans have been approved by

the Coast Guard."  33 C.F.R. § 115.50(b).  Although the
regulation cited by Gallenthin does not appear on the face of
GCIA's complaint,[2] Gallenthin appears to be arguing in its notice
of removal that the regulation is a "substantial, disputed
question of federal law [that] is a necessary element of one of
the well-pleaded state claims."  <u>Franchise Tax Bd. v. Constr.
Laborers Vacation Trust</u>, 463 U.S. 1, 23 (1983).

        GCIA argues that 33 C.F.R. § 115.50(b) is neither expressly
nor impliedly invoked by its complaint, making the regulation an
insufficient basis for Gallenthin to assert federal question
jurisdiction in removing this case.  As GCIA notes, "this suit
has nothing to do with whether the GCIA will actually be able to
condemn the Site," because all that is at issue in the state
court action is whether GCIA will be able to access the Property
to perform its initial investigations.  (Pl.'s Br. 11 n.5.)
Gallenthin's reliance upon the regulation "push[es] the cart far
in front of the horse," (Pl.'s Reply Br. 2), GCIA argues, because
"there currently is nothing for the United States Coast Guard to
approve," (Pl.'s Br. 10.)  Because GCIA's complaint is limited to
its claimed right of entry as a prospective condemnor under

_____

        [2]  It is not entirely clear whether Gallenthin continues to
rely on 33 C.F.R. § 115.50(b) in arguing that federal question
jurisdiction exists in this case.  Although it is the only
federal law referenced in Gallenthin's notice of removal, it is
not mentioned in Gallenthin's brief in opposition to GCIA's
motion for remand.

N.J.S.A. 20:3-16, and does not reach issues such as the actual condemnation of Gallenthin's property or the actual location and plans for the contemplated bridge, GCIA argues that the regulation cited by Gallenthin is not remotely invoked by its state law claim.

GCIA's state law claim against Gallenthin does not "depend[] on construction of federal law," and the regulation cited by Gallenthin does not provide a basis for federal question jurisdiction.  Bauchelle v. AT & T Corp., 989 F. Supp. 636, 641 (D.N.J. 1997).  Although as a general matter federal question jurisdiction exists only if the complaint pleads a federal cause of action, "[t]he state suit need not invoke a federal law in order to 'arise under' it for removal purposes."  Higgins, 281 F.3d at 389.  Rather, under the substantial federal question doctrine, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal law and state judicial responsibilities."  Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 315 (2005).  The Supreme Court has emphasized that the substantial federal question doctrine will apply only to a "slim category" of cases, Empire Healthchoice Assur., Inc. v. McVeigh, 126 S.Ct. 2121, 2137 (2006), in which "claims recognized under state law . . .

8

nonetheless turn on substantial questions of federal law,"
Grable, 545 U.S. at 312.

GCIA's state law claim for access to the Property under New
Jersey's prospective condemnation statute does not fit within
this slim category.  As GCIA argues, its state law claim turns on
the very narrow question of whether it can access the Property to
perform inspections in anticipation of determining whether the
bridge can be built on Defendant's property under N.J.S.A. 20:3-
16.[3]  Indeed, GCIA's state court complaint recognizes that the
proceedings are "by no means guaranteed to result in a bridge
over the property owned by Gallenthin Realty Co., Inc."[4]  (Def.'s
Notice of Removal Ex. A ¶ 24.)  The bridge approval regulation
raised by Gallenthin is outside the scope of GCIA's claimed right
of access to the Property, which is a question of state law
wholly separate from whether the United States Coast Guard

---

[3]  The prospective condemnation statute provides in relevant
part:

> Prior to the commencement of any action, a prospective
> condemnor and its employees and agents, during reasonable
> business hours, may enter upon any property which it has
> authority to condemn for the purpose of making studies,
> surveys, tests, soundings, borings and appraisals,
> provided notice of the intended entry for such purpose is
> sent to the owner and the occupant of the property by
> certified mail at least 10 days prior thereto.

N.J.S.A. 20:3-16.

[4]  This statement in the Complaint quotes the April 28, 2006
order of the New Jersey Superior Court that initially ruled that
GCIA could access the Property under N.J.S.A. 20:3-16.

ultimately will approve the plans for the as-yet hypothetical bridge.[5]  In other words, this action does not even satisfy Grable's threshold requirement that the "state-law claim necessarily raise a stated federal issue" in order for federal question jurisdiction to lie under the substantial federal question doctrine.  Grable, 545 U.S. at 315.  The determination of GCIA's right of access to the Property does not "depend[] on construction of federal law," Bauchelle, 989 F. Supp. at 641, nor is the regulatory provision for Coast Guard approval of bridges a "necessary element of one of the well-pleaded state claims." United Jersey Banks v. Parell, 783 F.2d 360, 366 (3d Cir. 1986). Because the federal regulation cited in Gallenthin's notice of removal is not necessarily – indeed not even conceivably – raised by GCIA's state law claim, the substantial federal question doctrine provides no basis for jurisdiction over this case.

     2.   Complete Preemption

     Gallenthin argues in the alternative that "because of the very nature of Plaintiff's property, which for over a hundred

---

     [5]  In its brief in opposition to GCIA's motion, Gallenthin repackages its argument concerning 33 C.F.R. § 115.50(b) to suggest that "the United States [is] a necessary party in this action."  (Pl.'s Opp'n Br. 19.)  Irrespective of how Gallenthin's argument concerning federal approval of bridge plans is characterized, the critical point remains that the issue of federal approval of the hypothetical bridge is not "necessarily raise[d]" by GCIA's claim, Grable, 545 U.S. at 315, which is narrowly focused on its statutory right to access potentially condemnable property for investigatory purposes.

years has been part of Federal waterway improvement actions,"
GCIA's state-law claim for prospective condemnation access arises
under federal law under the complete preemption doctrine.
(Def.'s Opp'n Br. 17.)  Gallenthin references over fifty federal
"documents and enactments" – ranging from maps of Mantua Creek,
to reports issued by the Army Chief of Engineers, to
congressional appropriations bills, to the NEPA – in an effort to
show that "[f]ederal law and enactments have continually
protected its rights in its water front property and controlled
the use of the property."  (Id. at 7-14, 19.)  Gallenthin urges
the Court to find that the effect of this purportedly pervasive
federal protection brings this case in line with Oneida Indian
Nation of N.Y. State v. Oneida County, New York, in which the
Supreme Court recognized that federal question jurisdiction
existed over state law property claims regarding Oneida Indian
lands because "[f]ederal law now protects, and has continuously
protected from the time of the formation of the United States,
possessory rights to tribal lands, wholly apart from the
application of State law principles, which normally and
separately protect a valid right of possession."  414 U.S. 661,
677 (1974).

     According to GCIA, Gallenthin's argument misconstrues the
doctrine of complete preemption and rests entirely on a single,
inapposite case.  GCIA notes that "federal question jurisdiction

based on complete preemption [applies] only in a very narrow
class of cases that are so necessarily federal that they always
permit removal to federal court." (Pl.'s Reply Br. 5) (citing
Aetna Health Inc. v. Davila, 542 U.S. 200, 207-08 (2004)).
Courts in the Third Circuit, Plaintiff argues, recognize federal
question jurisdiction based on complete preemption only where the
proponent of federal jurisdiction establishes two criteria: (1)
"the purported preempting federal statute must contain a civil
enforcement provision comparable to that provided by the state
statute," and (2) "the federal statute must demonstrate
Congress's clear intention to permit removal despite the
plaintiff's exclusive reliance on state law." (Id. at 5-6)
(citing Bauchelle, 989 F. Supp. at 644). Neither prong is met
here, according to GCIA, as the plethora of documents amassed by
Gallenthin neither create a civil enforcement provision, nor do
they demonstrate any congressional intent to permit removal to
federal court. (Id. at 6-7).

Finally, GCIA argues that Oneida "arose in an extremely
unique circumstance that has no bearing on the issues in this
matter." (Id. at 7.) Those unique circumstances, according to
GCIA, rested on the singularly federal nature of possession
claims over Native American land. (Id. at 7-8.) GCIA argues
that "[t]here is no such issue before this Court – the GCIA's
right to precondemnation access under the state court access

order and N.J.S.A. 20:3-16 present only state law issues."  (Id. at 8.)

Because none of the materials referenced by Gallenthin imposes a "preemptive force . . . so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim," the Court will grant GCIA's motion to remand. In re Community Bank of Northern Virginia, 418 F.3d 277, 294 (3d Cir. 2005) (quoting Caterpillar, 482 U.S. at 393).  Under the doctrine of complete preemption, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); see also Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.").

Complete preemption is a unique and narrowly applied jurisdictional doctrine and is to be distinguished from ordinary preemption.  As the Court of Appeals for the Second Circuit has explained,

> [m]any federal statutes – far more than support complete
> preemption – will support a defendant's argument that
> because federal law preempts state law, the defendant
> cannot be held liable under state law . . . . The Supreme
> Court has left no doubt, however, that a plaintiff's suit

13

does not arise under federal law simply because the
defendant may raise the defense of ordinary preemption.

Sullivan v. American Airlines, Inc., 424 F.3d 267, 272-73 (2d

Cir. 2005) (internal quotations and citations omitted).  As GCIA

correctly argues, the Court of Appeals for the Third Circuit has

held that complete preemption creates federal question

jurisdiction only where: (1) "the statute relied upon by the

defendant as preemptive contains civil enforcement provisions

within the scope of which the plaintiff's state claim falls," and

(2) there is "a clear indication of a Congressional intention to

permit removal despite the plaintiff's exclusive reliance on

state law."  Goepel v. National Postal Mail Handlers Union, 36

F.3d 306, 311 (3d Cir. 1994) (internal quotations and citations

omitted).

The vast majority of the maps, reports, and appropriations

bills relied upon by Defendant are not even susceptible to

analysis under this standard, since most are not statutes, none

appears to create a civil enforcement provision, and nothing

Defendant has submitted indicates that these materials evidence

the congressional intent to permit removal required in Goepel.

Cf. Schmeling v. NORDAM, 97 F.3d 1336, 1342 (10th Cir. 1996)

(noting that complete preemption is "not as a crude measure of

the breadth of the preemption (in the ordinary sense) of a state

law by a federal law, but rather as a description of the specific

situation in which a federal law not only preempts a state law to

14

some degree but also substitutes a federal cause of action for
the state cause of action, thereby manifesting Congress's intent
to permit removal") (cited approvingly in Community Bank, 418
F.3d at 294).  Gallenthin's reference to the NEPA's general
instruction that federal agencies account for the environmental
impact of "major Federal actions significantly affecting the
quality of the human environment," 42 U.S.C. § 4332(2)(C), not
only fails to satisfy both prongs described in Goepel, but is
entirely irrelevant to GCIA's state-law claim – Gloucester
County's access to Gallenthin's property is not a "major Federal
action[]," id (emphasis added), and it is difficult to imagine
that the "studies, surveys, tests, soundings, borings and
appraisals" authorized by N.J.S.A. 20:3-16 will "significantly
affect[] the quality of the human environment" within the meaning
of section 4332(2)(C).

Finally, Gallenthin's reliance upon Oneida is misplaced.  As
GCIA correctly argues, Oneida turned on the uniquely federal
character of possession claims over Indian tribal land.  The sui
generis character of the Court's analysis in Oneida has been
widely acknowledged, including by the Supreme Court itself.  See,
e.g., Anderson, 539 U.S. at 8 n.4 (noting that because Oneida
"turned on the special historical relationship between Indian
tribes and the Federal Government, it does not assist the present
analysis"); Sullivan, 424 F.3d at 272 n.6 ("The Supreme Court has

also held in [Oneida] that certain claims related to Indian
tribal lands are completely preempted, but the preemption
analysis in that case cannot be generalized to cases not
involving Indian tribes.").  The mere existence of governmental
maps, reports, and appropriations bills that mention Defendant's
property, or the region where it is located, does not begin to
approach the uniquely federal claims at issue in Oneida, where
the very right to possession at issue was "conferred by federal
law."  414 U.S. at 666.

In short, because the Court does not have federal question
jurisdiction over Plaintiff's state-law claim, the Court will
grant Plaintiff's motion to remand.

**B.   Motion for Costs and Fees**

GCIA argues that it is entitled to have Gallenthin pay for
the costs and fees it has incurred as a result of Gallenthin's
improper removal.  According to GCIA, costs and fees for improper
removal may be awarded where the removing party "lacked an
objectively reasonable basis" to seek removal.  (Pl.'s Br. 11)
(citing Martin v. Franklin Capital Corp., 546 U.S. 132, 141
(2005).  GCIA argues that Gallenthin's inconsistent, evolving
justifications for removal demonstrate that Gallenthin lacked
such a reasonable basis, and instead used the removal as a bad-
faith opportunity to delay the condemnation of its property:

> GRD made no mention of 'pervasive' federal regulations or
> preemption in its removal papers.  Instead, confronted

16

> with case law that its asserted reason was invalid, GRD
> tried to figure out a 'better' reason to support its
> removal than that asserted in its Notice. In fact, the
> regulation [cited] in GRD's Notice is not even mentioned
> in its opposition brief, and GRD apparently no longer
> relying on that regulation. This leads to the inescapable
> conclusion that GRD realizes that its notice of removal
> 'lacked an objectively reasonable basis' to support
> removal. Moreover, as discussed above, the arguments in
> GRD's opposition brief also fail to state an objectively
> reasonable basis to support removal.

(Pl.'s Reply Br. 15.)  At the February 4, 2008 hearing, GCIA also

drew the Court's attention to an earlier action brought by

Gallenthin in the United States District Court for the Eastern

District of Pennsylvania to enjoin the condemnation of its

property, in which the court held that it lacked federal question

jurisdiction because the case merely concerned "a private

individual's challenge to the exercise by a municipality of its

power to enact local land use law; no more." Gallenthin Realty

Development, Inc. v. BP Products of North America, No. 04-4849,

2005 WL 408041, at *2 (E.D.Pa. Feb. 18, 2005), aff'd 163 Fed.

Appx. 146 (3d Cir. 2006), cert. denied, 127 S.Ct. 57 (2006).[6]  In

light of the outcome in this earlier action, GCIA argues,

Gallenthin cannot in this case plausibly profess its ignorance as

---

[6]   Specifically, the court in Gallenthin Realty Development,
Inc. v. BP Products of North America held that neither the Rivers
and Harbors Improvement Act, 33 U.S.C. §§ 540, et seq., nor the
Commerce Clause of the United States Constitution authorized the
exercise of subject matter jurisdiction under 28 U.S.C. § 1331.
Gallenthin appealed this decision, and the Court of Appeals for
the Third Circuit affirmed the district court's order.

to the clearly established requirements of the well-pleaded complaint rule.

Gallenthin has opposed GCIA's motion for costs and fees, arguing that "the fact that the Plaintiff's property was so intertwined with Federal Statutes and enactments[] prevents a conclusion that the removal lacked an objectively reasonable basis." (Def.'s Opp'n Br. 20.)  In addition, Gallenthin argues that "special circumstances exist for the Court to exercise discretion and not award fees," because Gallenthin has already had to litigate a case concerning the exercise of eminent domain over the Property, and so "one can understand that a party might be loathe to face the prospect of rerunning the same course a second time." (Id. at 21.)

The Court will grant GCIA costs and reasonable attorneys' fees, as Gallenthin's removal of this case lacked an objectively reasonable basis.  Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The Supreme Court stated in Martin v. Franklin Capital Corp. that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked any objectively reasonable basis for seeking removal," but that "when an objectively reasonable basis exists, fees should be denied." 546 U.S. at 141.  The objective

18

reasonableness standard is intended to balance two statutory goals: "deter[ing] removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Id. at 140.

Courts in this Circuit have awarded "costs, expenses, and attorneys' fees where the complaint clearly does not state a claim removable to federal court or where minimal research would have revealed the impropriety of removal." Newton v. Tavani, 962 F. Supp. 45, 48 (D.N.J. 1997) (internal citations omitted). In this case, as is explained, supra, Gallenthin in its notice of removal invoked a federal regulation that in no way supports the jurisdiction it asserts, and misconstrued the requirements for complete preemption based on an over-extended reading of an inapposite, obviously sui generis case. The analysis of Gallenthin's asserted grounds for federal jurisdiction in this case demonstrates that Gallenthin lacked an "objectively reasonable basis for seeking removal," Martin Franklin, 546 U.S. at 141, which would have been evident upon the performance of "minimal research," Tavani, 962 F. Supp. at 48 – certainly less research than was likely employed in amassing the fifty or so maps, reports, and other materials Gallenthin cited in its opposition brief.  Moreover, the Court agrees with GCIA that in

19

light of the recent dismissal of Gallenthin's action in the
Eastern District of Pennsylvania for comparable jurisdictional
shortcomings – and the affirmance of that decision by the court
of appeals – Gallenthin's arguments regarding the reasonable
basis for its removal notice in this case are especially
unconvincing.

In addition, as GCIA notes, Gallenthin's shifting arguments
on the question of federal jurisdiction have presented Plaintiff
with a moving target.  Had Gallenthin ultimately settled on a
plausible argument in its assertion that the Court has federal
question jurisdiction over the case, it would be far less
suggestive of bad faith and delay than is indicated by
Gallenthin's evolving but consistently unfounded jurisdictional
claims.  While Gallenthin's unhappiness at the prospect of having
its property condemned by GCIA may be understandable, such
unhappiness does not make its asserted grounds for removal
"objectively reasonable," Martin Franklin, 546 U.S. at 141, nor
does it excuse the baseless removal of GCIA's action to federal
court in order to delay or otherwise inhibit GCIA's capacity to
access the Property.

Because Gallenthin has failed to present an objectively
reasonable basis for seeking removal, the Court will award GCIA
attorneys' fees and costs under 28 U.S.C. § 1447(c).

20

**IV.   CONCLUSION**

For the reasons discussed above, the Court will grant GCIA's motion to remand this matter back to state court, and will order Gallenthin to pay for the fees and costs that GCIA has incurred as a result of Gallenthin's improper removal.   The accompanying Order will be entered.


**February 5, 2008**                        **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge